May it please the Court. I'm Chris Leopold here on behalf of Appellants Land O'Lakes and Unum this morning. This case involves a claim for benefits due under an ERISA plan. It's different than most claims that come before this Court in that the insurance company involved actually paid the claim, so there's no dispute about whether the claim should be paid or not, which has implications for the deference that is due to the decision maker in this case. The plaintiff's son was a participant in a plan through his employer, Land O'Lakes. He had life and accidental death insurance. He did not submit a beneficiary designation, or at least there is nothing on file. No one could find one despite numerous efforts, multiple efforts, to find one. During the claims process, Unum investigated the claim, and it was actually the plaintiff in this case, who is the deceased mother, who brought to Unum's attention the existence of a live-in fiancé whom the deceased Mr. Engle had living with him at the time. Acting on that information but not relying on it, Unum sent out an affidavit to that domestic partner under the plan and asked her to swear to some certain facts that were in that affidavit, and she did so. Interestingly, during a telephone call in the claims process, Unum explained to the plaintiff the process that would happen. It also explained to the plaintiff that Ms. Jones, who she had identified, would be the likely beneficiary, and the plaintiff said good in response to that. She explained that the domestic partner and her son were engaged to be married. It later came out that she had her appointed as co-guardian of the children. Everyone seemed satisfied with this outcome. As I said, not relying on the information provided by plaintiff, but furthering its investigation, Unum eventually paid the life benefits, and it paid the accidental death plan. It was about five months later that the plaintiff first contacted Unum again, stating her dispute with the claims decision process, and then this lawsuit ensued thereafter. The lawsuit began with plaintiff bringing the action on behalf of the estate of her son. Mr. Engel did have two children from a previous relationship. During the claims process, Unum has determined that if the domestic partner were not the proper beneficiary, it would be the children and not plaintiff or the estate who would be the appropriate beneficiary. They would kind of be the next in line. This case is mostly, to me at least, from my perspective, about deference and the deference that is due on these ERISA administrative claims. We have, as most of, a lot of the ERISA principles have been pronounced by the Supreme Court, and it's fairly clear case law, and there's large agreement amongst all the appellate courts that the abuse of discretion standard applies. Further, the statute in the Supreme Court has said that the language of the plan is of primary importance in ERISA. So what Unum was confronted with was a plan that, to be quite honest, was not, you know, cut and dried, clear as it could have been. But Unum made, at the time it made its decision, an unconflicted decision to pay the benefits and made a reasonable interpretation of that language. I don't think that there, well, let me back up. There are two sort of contractual provisions at issue in this case. One, the language's spouse, wherever it's used, includes the term domestic partner. Where's the context in the policy of the use of that language? Yes. It seems like it's specifically dealing with dependents and not with beneficiaries. Well, I agree that it certainly appears in that section. And that section... No, it doesn't. No, it does not. So it's sort of out of the blue in the middle of that section. I would grant you that, Your Honor. But if read to only apply to that section, the provision is superfluous. Because that very section addresses spouse and domestic partner benefits separately. You know, it's only speculation that clearly that language should have been put someplace else in the plan. But it wasn't. Nevertheless, as the administrator of the plan, Unum is confronted with that language that says spouse, wherever used, includes domestic partner. And it's that use of the term wherever used that I think expands the definition beyond that section. Because again, if you look at the... But you also have a specific section that deals with the determination of the recipient, who's to be recipients of benefits in case there's no designee. Is that also part of the policy? I'm sorry, Your Honor. Is there a part of the policy that explains who is entitled to benefits should a designated beneficiary not be available? Yes, there is. It's in an earlier part of the plan. And it goes through and says, if you do not name a beneficiary, it says your death will first be paid to your estate. But instead of making a death payment to your estate, Unum has the right to make payment. And then it lists the order of the beneficiaries. And the first one is spouse, which we interpret to say includes domestic partner. Someone reading the policy at this point would be completely unaware of the provision later that equates domestic partners with spouses. If they read the policy front to back and stopped there, they would not be aware of that. No, Your Honor. But I think that you have to look at all the language of the plan. I think the Supreme Court case law is very clear that the language of the plan controls. The language of the plan is of paramount importance. But the language can't violate logic in the sense of just that someone would be deemed to be a reasonable person in reading the language. You read the language and it says spouse, and then you go to children, you go to the others. And there's no reason to go and look in a section that deals with dependents' coverage for health or whatever benefits to determine who's the recipient of a death payment. Well, I think that you still have, I agree that someone reading that would look at that and say it just says spouse. But if you look at the entire plan, it expands the definition of plan. There's also a glossary section at the end that modifies numerous words in that plan. And someone could, you know, read through and then look back to the glossary later and it modifies certain words or the meanings of certain words in that plan. I don't think that it defeats the purpose of ERISA to look at all the words of the plan. And there's simply no other explanation of that language, spouse, wherever used, includes domestic partner, that would not take that into account. And I'd also like to point out that that spouse, wherever used language has meaning beyond just the beneficiary designation in the policy. There are other provisions of that policy that only speak in terms of a spouse. And they include the portability section. So what section? The portability section that allows a dependent or the participant to port the insurance after they're no longer employed with the company. There's also a section on the amount of benefits that are available that only speaks in terms of spouse. And if you read the section of the plan talking how domestic partners can clearly be insured under the plan as dependents, that's laid out specifically. To say that they can be insured but at the same time they can't port that insurance and it's silent about the amount of coverage they can get just doesn't make sense. The only way to read that language in context and to make sense of it is to read it literally, which is the- Well, of course, you don't have to show that there's only one way, your way. All you've got to show is that you made a reasonable stab. I know that's not what the cases say. We have all these Finley factors and the rest, but essentially it seems to me that your case, if you have one, is that your interpretation wasn't obviously wrong, that there was some reason for it and because you're entitled to some deference, you win. That's correct. So- The statements from this court are that it need not be, that it only need be reasonable and it need not be the only one or even the best one. It just needs to be reasonable in the context of the language of the plan. And your Honor brought up the Finley factors and it's, of course, the Finley factors, it's a burden-shifting scheme. It's not like the McDonnell-Douglas framework that you deal with so often in employment discrimination cases. This is not a case where Unum has to satisfy these factors in order to win. Those are simply factors that you take into account and- So who does the plan contemplate to designate a domestic partner? Who does the plan contemplate to designate the domestic partner? Well, it depends on the situation. In the section of the plan that deals with a dependent becoming insured under the plan, it talks about their needs to submit the domestic partner affidavit to start off that insurance. So I guess it's unclear if that comes from the employee or if it comes from the domestic partner. In that context, I would assume it would come from the participant because they're seeking to have them covered under their plan. For purposes of the designation of a recipient of death benefits, who designates the individual as a domestic partner? Well, at that point, of course, if the participant has died, they're no longer there and Unum has a facility of payment affidavit that it uses that there's testimony or there's evidence in the record about how Unum approaches this situation, which is that it uses that facility of payment affidavit. It sends it out to the identified domestic partner and asks them to swear to certain facts, which is what happened here. Additionally- But there was no domestic partner that was identified at that point, was there? Yes. Ms. Jones was identified first by the plaintiff in- She didn't even know what a domestic partner was. Well, she submitted a form and she checked the box for domestic partner. And that's what tipped Unum off to, okay, there might be someone out here who is a domestic partner. But Unum didn't rely on that. They didn't say, okay, mom said there's a domestic partner, therefore we're done. Then they sent out the affidavit to the possible domestic partner and asked her to swear to certain facts, which she did. So that's how that decision came about. Your Honor, if I could reserve the rest of my time, unless you have more questions. Thank you, Mr. Leopold. Mr. Blanchard? May it please the Court. The questions go directly to what the issue is in this case. And as Judge Arnold points out, was this a reasonable decision? And I think for all the reasons that Judge Hayes enumerated in her opinion, the answer to that is no. And they talk about this facility of payment affidavit. Well, that's what my client, Mrs. Engel, originally was giving to her. It was an affidavit saying that she was doing this as the personal representative of the state. There's a box. Was there a significant other domestic partner? Well, yeah, he'd been living with Jacqueline Jones. And so she said yes. But when you go to – and this really goes down to the two provisions that have been discussed, which is spouse, whatever you – what Judge Hayes refers to as the spousal enlargement language. And then there's the domestic partner designation. And the answer to the question that was asked, the direct answer is the person who designates the domestic partner is the plan participant. And if we look at ERISA and the reasonableness test, I think don't you have to look at the purpose of the ERISA plan itself. And under 29 U.S.C.A. 1104, it's exclusively for the purposes of providing benefits to the participants and their beneficiaries. A question that I suggest to ask with regard to reasonableness is what was Terry Engel's expectation? And the undisputed facts for what their worth are, both my client and Ms. Jones told Unum that he would want his kids to have the money. He did not designate a domestic partner. And the language comes in two places. It comes under eligibility for life insurance and eligibility for the accidental death benefits. And the language under both those sections with the spousal enlargement language and the domestic partner designation language are exactly the same. Now, if they're to apply to the whole policy, why aren't they, as Judge Hayes points out, looking at the whole plan, why aren't they in the glossary of terms? But to be a domestic partner requires the participant to designate the domestic partner. And essentially, I mean, this is what you're saying is, well, gee, here's $233,000. Would you sign that? Are you a domestic partner? And if you sign this affidavit, we're going to give you $233,000. They let the domestic partner decide whether she should get the money, not Terry Engel. Now, he didn't. And the testimony, again, undisputed facts were from both Jacqueline Jones and the grandmother, he filed two beneficiary forms. He named the kids. You can't find them. And we've all talked about the Finley factors and the five Finley factors. In essence, it seems to me that at least one, two, three, and five of the Finley factors all go to, is this a reasonable interpretation of the plan? And is it reasonable to let the plan administrator decide who a domestic partner is when, if Terry Engel read that plan, it would tell him that he was the only one who had the right to designate a domestic partner. Counsel, would you address the issue of what appears to be the law, that a substantial degree of deference is accorded to the administrator in interpreting the plan? That is the law, Judge Smith, and I agree. They give deference. I think I would, my answer to that is the quote from Judge Hayes and a case which I cite in my brief, which I think is the Lichtig versus Businessman Assurance case, which is where there's a failure to follow the clear language of the policy, and I may be paraphrasing here, that is strong evidence of arbitrary and capricious action. This is just a misinterpretation of the policy. What is our standard in terms of review? Is it arbitrary and capricious? The standard of review is abuse of discretion. This court reviews Judge Hayes' opinion de novo. The standard that she was bound by and the standard of review of the decision is, was there an abuse of discretion? That's the way I understand the law, Judge, and I agree with Judge Hayes, obviously. There was an abuse of discretion. This is a misinterpretation of the policy. It's certainly not what Terry Engel expected. The motion, the summary judgments as entered by Judge Hayes should be affirmed by this court, and if you don't have any other questions, I've said all I can. Thank you very much. Thank you, Your Honors. I'll just respond to a couple of comments that he made during his argument. First, one of the important facts of this is that the glossary does not define domestic partner, and the delegation to UNAM of the authority to interpret and define undefined terms, that is of paramount importance here. So Judge Hayes actually held that against UNAM and said, well, you should have included it in the glossary if you wanted it defined, but the system is supposed to work that UNAM defines undefined terms. The plaintiff talked about the expectations of the insured, and with due respect to him, the expectations of the insured don't come into play in this case because of the way ERISA works, which is that you're supposed to look to whether he had a beneficiary designation on file or not. He did not. And what the plan language says, the expectations of the insured, this is not a normal insurance contract interpretation case. Is UNAM obligated in any way to look behind the affidavit before fading it? Well, there's a different standard when you're talking about looking at the quantum of facts, which is substantial evidence. Well, what I'm saying is you give someone who has been identified to you as a potential domestic partner an affidavit. They fill it out and say, I swear, I swear, I swear, I swear. Is there any examination of whether any of those representations or the truthfulness of those representations? I think that there could be. It depends on the circumstances. You have to keep in mind that in this case they had talked to Mazingel on the phone, and she had said she was happy with that outcome. And also I think there is language in the plan that says that UNAM can rely on these affidavits and facts that are presented to them. You have to keep in mind that this is not a situation where we're looking for a preponderance of the evidence standard. This is an administrative scheme that was set up primarily to make the system efficient and prompt. The Department of Labor is often on insurers about, you need to get these life insurance claims paid quickly. You need to handle this investigation quickly and efficiently. Do your job, yes, but pay benefits when they're due. And that's exactly what UNAM did here was that it did an investigation, it looked into this, it promptly paid benefits, and the entire point of deference is to give UNAM the authority to make this call, which it did, and it was reasonable. Thank you, Your Honor. Thank you, Mr. Leopold. Thank you also, Mr. Blanchard. The court will take the case under advisement and will render a decision in due course. You may be excused.